IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MICHELLE HOUCKS**, c/o Cornerstone Law Firm 5821 NW 72nd Street Kansas City, MO 64151<br><br>Plaintiff,<br><br>v.<br><br>**OWENS CORNING INSULATING SYSTEMS LLC** *Registered Agent*: Corporation Service Company 2900 SW Wanamaker Drive Suite 204, TOPEKA, KS 66614<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. _____<br><br>**REQUEST FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Michelle Houcks, by and through her attorney, and for her cause of action against Defendant Owens Corning, alleges as follows:

**Parties and Jurisdiction**

1. This is an employment case based upon Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981.

2. Plaintiff Houcks is an African American citizen of the United States, residing in Kansas City, Wyandotte County, Kansas.

3. Defendant Owens Corning Insulating Systems LLC ("Defendant" or "Owens Corning") is and was at all relevant times a for-profit foreign corporation organized under the laws of Delaware, and active and in good standing in the state of Kansas.

4. Defendant conducts substantial and continuous business in the state of Kansas, specifically at 300 Sunshine Rd, Kansas City, Kansas 66115.

1

5. At all relevant times, Defendant employed more than five hundred (500) employees.

6. Defendant is an employer within the meaning of Title VII.

7. This court has personal jurisdiction over Defendant.

8. Subject matter jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331 because some or all of Plaintiff's claims arise under the laws of the United States.

9. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the alleged discriminatory conduct described herein occurred in this District.

## Administrative Procedures

10. On or about March 1, 2019, Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), alleging race discrimination and retaliation (attached as Exhibit 1 and incorporated herein by reference).

11. On or about August 30, 2019, Plaintiff timely filed an Amended Charge of Discrimination with the EEOC alleging race discrimination, retaliation, and hostile work environment against Defendant (attached as Exhibit 2 and incorporated herein by reference).

12. On March 26, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue (attached as Exhibit 3 and incorporated herein by reference).

13. This lawsuit is filed within 90 days of Plaintiff's receipt of the EEOC's issuance of Plaintiff's Notice of Right to Sue.

14. The aforesaid charge of discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC

investigation, which could reasonably be expected to have grown out of the charge of discrimination.

15. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

16. This Complaint is filed within the applicable statute of limitations.

## Additional Factual Allegations

17. In May 2017, Plaintiff was hired by Defendant and began working as a Line Worker.

18. During Plaintiff's employment, she was subjected to racial slurs, offensive writings, and other forms of harassment from her supervisor and others in the workplace.

19. Plaintiff's supervisor, Joe ("Supervisor Joe"), is Caucasian.

20. Supervisor Joe and Plaintiff's other Caucasian coworkers frequently and repeatedly used the word "nigger" in the workplace.

21. Plaintiff's Caucasian coworkers used the word "nigger" both in general and specifically to refer to Plaintiff and other African American employees who worked for Defendant.

22. On or about October 31, 2018, Plaintiff reported the continued use of the word "nigger" by Supervisor Joe and other Caucasian coworkers to her Union.

23. On or about November 1, 2018, Plaintiff and another coworker reported the continued use of the word "nigger" by Supervisor Joe and other Caucasian coworkers to Defendant's Human Resources department.

24. Upon information and belief, Human Resources informed Supervisor Joe about Plaintiff's complaint.

25. Approximately two weeks after Plaintiff complained to HR, Supervisor Joe told Plaintiff and another African American employee that he "was going to get [our] black assess back" for reporting him to Human Resources.

26. Around this same time, Plaintiff was removed from the production line and was placed in Recon, which is a less desirable position.

27. When Plaintiff asked Supervisor Joe why she was being transferred to Recon, Supervisor Joe told me to "get [my] lazy black ass up" and go to Recon. Plaintiff promptly went to Human Resources and reported Supervisor Joe's conduct.

28. Plaintiff explained to Human Resources that the harassment by Supervisor Joe had not changed and that the situation was very stressful for her.

29. Shortly after she reported Supervisor Joe to Human Resources for the second time, Supervisor Joe began stating, "fuck you" or mouthing the words "fuck you" to Plaintiff when he saw her at work.

30. Supervisor Joe's conduct intimidated Plaintiff.

31. After Plaintiff complained about Supervisor Joe to Human Resources, Supervisor Joe applied harsher scrutiny to Plaintiff's work than others.

32. On one occasion while Plaintiff was working in Recon, Supervisor Joe criticized Plaintiff for taking a standard break pursuant to Defendant's policies, and commented, "that's why we don't like to keep your kind unsupervised". Plaintiff reported Supervisor Joe's comment to Human Resources.

33. Plaintiff complained to Human Resources that Supervisor Joe subjected her to a hostile work environment and that Plaintiff did not feel safe or comfortable around him.

34. On or about February 11, 2019, Supervisor Bernard told Plaintiff that "the office" told him to keep an eye on Plaintiff.

35. On March 1, 2019, Plaintiff filed a Charge of Discrimination against Defendant.

36. Despite Plaintiff's seniority status, Defendant did not permit Plaintiff to choose her station at work—a choice of which was afforded to Plaintiff's similarly situated coworkers.

37. During her employment, Defendant took several training opportunities away from Plaintiff—opportunities that would have permitted her to advance to a higher rate of pay and more favorable positions within the company.

38. Plaintiff she was never selected for the promotion despite performing equal to or better than her coworkers.

39. Plaintiff was told by Supervisor Bernard that she has a "target" on her back.

40. During the week of July 1, 2019, a noose appeared on Defendant's property.

41. Several African American employees complained about the noose.

42. Defendant decided that the noose was simply a "work rope" and that it wasn't long enough to be a noose.

43. The noose was removed but reappeared shortly after.

44. During the week of August 5, 2019, the words "Niggers Leave" was written on one of Defendant's bathroom stalls. Plaintiff reported this to Human Resources. In response, Human Resources told Plaintiff that a black person must have wrote the words on the stall because all the white people were in a meeting around the time the words were discovered.

45. During the week of August 5, 2019, Plaintiff went to Human Resources and implored them to do something about the racial issues in the workplace. Plaintiff stated that management didn't care about the African American employees.

46. Plaintiff told Human Resources that the racial events had caused her stress, anxiety, and panic attacks. Plaintiff reported that she felt uncomfortable at work and feared for her job and safety.

47. On August 30, 2019, Plaintiff filed her Amended Charge of Discrimination.

48. In September 2019, Supervisor Joe called Plaintiff a "dumb black lazy cunt". Plaintiff reported this to Human Resources as well as a managerial employee named Sarah.

49. The day after Plaintiff complained to HR and Sarah in September 2019, Plaintiff was subjected to discipline that was unwarranted.

50. A Union investigation into the underlying facts of Plaintiff's discipline revealed that the write-up was unfounded.

51. After Defendant disciplined Plaintiff, she asked Sarah why she was treated differently than everyone else.

52. In response to each of Plaintiff's complaints to Human Resources as described herein, Defendant took little, if any, action to investigate or otherwise address Plaintiff's concerns about racism at work.

53. In October 2019, Defendant terminated Plaintiff's employment.

**COUNT I**
**Violation under 42 U.S.C. §§ 2000e** *et seq*.
**Race Discrimination**

54. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

55. Plaintiff is a member of a protected class because she is African American.

56. Defendant discriminated against Plaintiff in the terms and conditions of her employment by denying her opportunities to advance and by transferring Plaintiff to undesirable working positions.

57. Plaintiff's race was at least a motivating factor in the aforementioned discrimination against her.

58. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

59. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

60. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

61. As shown by the foregoing, as a result of her race, Plaintiff suffered intentional discrimination at the hands of the Defendant in violation of Title VII.

62. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

63. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

64. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

65. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

66. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Violation under 42 U.S.C. §§ 2000e *et seq*.
### Race Discrimination (Hostile Work Environment)

67. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

68. Defendant subjected Plaintiff to unwelcome harassment based on her race.

69. Defendant's harassment of Plaintiff was severe or pervasive so as to form a hostile work environment.

70. A term, condition, or privilege of Plaintiff's employment was affected by Defendant's harassment of Plaintiff.

71. Defendant's harassment of Plaintiff included calling her as a "nigger"; "lazy black ass"; "your kind"; and "black lazy cunt."

72. Defendant's harassment of Plaintiff also included intimidation from her supervisor, tolerating nooses on workplace premises, and tolerating racial slurs in the workplace.

73. The conduct described herein would have offended a reasonable person of the same race in Plaintiff's position.

74. Management level employees of Defendant knew or should have known of the racial discrimination and harassment herein but failed to take appropriate action to address the discrimination, and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

75. By failing to conduct a prompt investigation of Plaintiff's allegations of race discrimination and harassment, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

76. Defendant knew or should have known of the harassment to which Plaintiff was subjected.

77. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

78. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

79. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

80. As shown by the foregoing, as a result of her race, Plaintiff suffered intentional discrimination at the hands of the Defendant in violation of Title VII.

81. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

82. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

83. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

84. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

85. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

### COUNT III
### Violation under 42 U.S.C. §§ 2000e *et seq.*
### Race Discrimination (Termination)

86. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

87. Plaintiff is a member of a protected class because she is African American.

88. Defendant terminated Plaintiff's employment.

89. Plaintiff's race was at least a motivating factor in Defendant's decision to terminate her employment.

90. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

91. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

92. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

93. As shown by the foregoing, as a result of her race, Plaintiff suffered intentional discrimination at the hands of the Defendant in violation of Title VII.

94. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

95. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

96. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

97. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

98. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## COUNT IV
## Violation under 42 U.S.C. §§ 2000e *et seq.*
## Retaliation

99. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

100. By opposing and/or making good faith reports of discrimination in the workplace, including filing two Charges of Discrimination, Plaintiff engaged in multiple protected activities throughout her employment.

101. Plaintiff suffered multiple adverse employment actions during her employment including, discipline, transfer to an undesirable position, denial of employment opportunities, heightened criticism, and termination.

102. Plaintiff's good faith reports of/opposition to race discrimination were a motivating factor in the aforementioned adverse employment actions.

103. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

104. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination and retaliation against its employees.

105. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

106. As shown by the foregoing, because of her complaints of discrimination and/or opposition to unlawful employment practices, Plaintiff suffered retaliation at the hands of the Defendant in violation of Title VII.

107. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

108. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

109. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination and retaliation against Plaintiff.

110. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus

justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

111. Pursuant to the provisions of Title VII, Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

### COUNT V
### Violation under 42 U.S.C. § 1981
### Race Discrimination

112. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

113. Defendant subjected Plaintiff to disparate treatment based on her race, including discipline, harassment, transfer to an undesirable position, denial of employment opportunities, heightened criticism, and termination.

114. Defendant treated Plaintiff's similarly situated Caucasian coworkers more favorably than Plaintiff.

115. Plaintiff's race was at least a motivating factor in the disparate treatment to which she was subjected.

116. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the

scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

117. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination against its employees.

118. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including 42 U.S.C. § 1981.

119. As shown by the foregoing, as a result of her race, Plaintiff suffered intentional discrimination at the hands of the Defendant in violation of 42 U.S.C. § 1981.

120. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

121. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

122. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

123. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

124. Pursuant to the provisions of 42 U.S.C. § 1981(a), Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## COUNT VI
### Violation under 42 U.S.C. § 1981
### Retaliation

125. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

126. By opposing and/or making good faith reports of discrimination in the workplace, including filing two Charges of Discrimination, Plaintiff engaged in multiple protected activities throughout her employment.

127. Plaintiff suffered multiple adverse employment actions during her employment including, discipline, transfer to an undesirable position, denial of employment opportunities, heightened criticism, and termination.

128. Plaintiff's good faith reports of/opposition to race discrimination were a motivating factor in the aforementioned adverse employment actions.

129. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant, and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendant, thus making Defendant liable for said actions under the doctrine *respondeat superior*.

130. Defendant failed to make good faith efforts to establish and enforce policies to address and prevent illegal discrimination and retaliation against its employees.

131. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including 42 U.S.C. § 1981.

132. As shown by the foregoing, because of her race, Plaintiff suffered intentional discrimination at the hands of the Defendant in violation of 42 U.S.C. § 1981.

133. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

134. By failing to take prompt and effective remedial action, Defendant, in effect, condoned, ratified, and/or authorized discrimination against Plaintiff.

135. Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter Defendant and other employers from like conduct in the future.

136. Pursuant to the provisions of 42 U.S.C. § 1981(a) and § 1988(b) Plaintiff is entitled to recover reasonable attorneys' fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable

attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: /s/ Marc N. Middleton
    Marc N. Middleton    Kan. #24458
    m.middleton@cornesrtonefirm.com
    Megan Lowe Stiles    D. Kan. #78642
    m.stiles@cornerstonefirm.com
    5821 NW 72nd Street
    Kansas City, Missouri 64151
    Telephone    (816) 581-4040
    Facsimile    (816) 741-8889
    ATTORNEYS FOR PLAINTIFF